IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JACQUES R. SLOCUM                                                      PETITIONER
ADC #152766

V.                                         5:14-cv-00163-JM-JTK

WENDY KELLEY, Director,                                              RESPONDENT
Arkansas Department of Correction[1]

PROPOSED FINDINGS AND RECOMMENDATIONS INSTRUCTIONS

The following recommended disposition has been sent to United States District Court

Judge James M. Moody, Jr.   Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal basis

for the objection.  If the objection is to a factual finding, specifically identify that finding and

the evidence that supports your objection.  An original and one copy of your objections must

be received in the office of the United States District Court Clerk no later than fourteen (14)

days from the date of the findings and recommendations.  The copy will be furnished to the

opposing party.  Failure to file timely objections may result in waiver of the right to appeal

questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must,

at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if

---

[1]Pursuant to 28 U.S.C. § 2244, the Clerk is directed to substitute Wendy Kelley as the Respondent in this
matter.

such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Petitioner Jacques Slocum, an inmate at the Arkansas Department of Correction, filed this timely petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, after a Pulaski County, Arkansas, jury found him guilty of second degree murder, first degree endangering the welfare of a minor, and fleeing. (Doc. No. 1.) On April 15, 2015, the District Court entered an order adopting the Court's recommended partial disposition, dismissing Mr. Slocum's two ineffective assistance of appellate counsel claims. (Doc. No. 22 (adopting Doc. No. 18)). On October 6, 2015, the Court held an evidentiary hearing on Mr. Slocum's three ineffective assistance of trial counsel claims. (*See* Doc. No. 49.) Each party has submitted a post-hearing brief for the Court to consider. (Docs. No. 55-56.) For the following reasons, the Court recommends the district court deny Mr. Slocum's petition as procedurally defaulted.

I.      PROCEDURAL HISTORY

2

The procedural history of this case is documented in detail in the Court's previous recommendation. (Doc. No. 18.) The case reached this point after the Arkansas Supreme Court denied Mr. Slocum's petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37.1 ("Rule 37") because it was not verified. *Slocum v. State*, No. CR-14-96, 2014 Ark. 178 (Apr. 17, 2014). The court held that, even though Mr. Slocum had his petition notarized, and the circuit court held a hearing on the petition, because the petition did not attest that "the facts stated in the petition are true, correct, and complete to the best of petitioner's knowledge and belief," the petition did not conform to Arkansas Rule of Criminal Procedure 37.1(c). *Id.* at *2. Therefore, the Arkansas Supreme Court held that the circuit court did not have jurisdiction to consider the merits of the petition and dismissed the appeal. *Id.* at *3.

In the Court's previous recommendation, it held that the Arkansas Supreme Court's dismissal of Mr. Slocum's petition for failure to conform with the verification requirement of the Arkansas Rules of Criminal Procedure constitutes a "procedural default in an initial-review collateral proceeding." *Martinez v. Ryan*, 132 S.Ct 1309, 1318 (2012). The fact that Mr. Slocum proceeded *pro se* during his post-conviction proceedings can be cause for a substantial claim of ineffective assistance of trial counsel. *Id.* The Court subsequently held a hearing to determine whether Mr. Slocum's claims are substantial. (Doc. No. 18 at 8.)

## II.    FACTS FROM THE HEARING

At trial, the prosecutor argued that Mr. Slocum and Joe Jackson got in an argument. (Resp. Ex. 4-1 at 220.) Mr. Slocum was in his car at the time, and he got out of his car as the argument escalated. (*Id.*). At some point, Mr. Slocum got back in his car, pulled out a gun, and got back out of his car. (*Id.*). Mr. Slocum then shot Mr. Jackson twice, killing him. (*Id.*). Mr.

Slocum then got back in his car and drove away. (*Id.*). As the police followed him, Mr. Slocum fled at high speeds with his two-year-old child in the back seat. (*Id.* at 219.) While fleeing, Mr. Slocum threw the gun out of the car. (*Id.* at 218.)

A.     FAILURE TO INVESTIGATE

At trial, eye witnesses Tracy Brown and Tinell Williams testified for the State with details of the incident. (Doc. No. 54 at 90.) Mr. Slocum's trial counsel–Ms. LaTonya Austin–did not interview either witness prior to trial. (*Id.* at 90-91.) Ms. Austin attempted to contact both of them, but neither returned her phone calls. (*Id.*). However, both witnesses' testimony mirrored the statements that they gave to police, which Ms. Austin reviewed. (*Id.* at 92.)

Mr. Slocum testified that he wanted Ms. Austin to find two other eye witnesses–Randy Lewis and Keith Pittman–to corroborate his allegation of self-defense. (*Id.* at 45-46.) Mr. Slocum claimed that Lewis would have testified that he saw Mr. Jackson try to take the gun from him when the gun went off. (*Id.* at 46.) Mr. Slocum claims that Pittman stated to police that he saw a "squabble" between Mr. Jackson and Mr. Slocum. (*Id.* at 45.) Mr. Slocum then claims that Pittman said that "there was a small fight over the gun prior to him hearing shots." (*Id.*).

Ms. Austin testified that she attempted to call Lewis using the cell phone number Mr. Slocum provided her. (*Id.* at 92.) When Lewis did not return her calls, she sent the process server to locate Lewis, but the process server was unable to do so. (*Id.* at 93.) Ms. Austin testified that she also sent the process server to locate Pittman, but there was a female resident at the address she had for him who stated that he moved to Louisiana. (*Id.*). The female had no

forwarding information for Pittman. (*Id.*). Ms. Austin believed that Pittman's statement would not have been beneficial to Mr. Slocum because it was basically cumulative to other witnesses' testimony. (*Id.* at 93-94.)

     B.     FAILURE TO ASK FOR A COMPETENCY HEARING

     Before trial, Ms. Austin did not ask the judge to send Mr. Slocum for a competency hearing. (*Id.* at 122.) Mr. Slocum has had a series of mental evaluations by psychologists in the California Department of Corrections, Florida Department of Corrections, and the Arkansas State Hospital. (*See* Pet.'s Ex. 2, 3, 5.) Ms. Austin testified that she did not know about these records, and there were no "red flags" to ask the court to grant Mr. Slocum a competency hearing other than the fact that Mr. Slocum committed a violent crime. (Doc. No. 54 at 122.) Robert P. Forrest, M.D., stated that after reviewing all of the records, he believes Mr. Slocum would have still been competent to stand trial. (Resp. Ex. 9, Addendum, at 3.)

     Had Ms. Austin requested a mental evaluation, she testified that she would have had access to the mental health records that the Court obtained during the habeas proceedings. (Doc. No. 54 at 126.) She could have used those records as mitigating evidence during sentencing. (*See* Doc. No. 54 at 114-15 (discussing how Mr. Slocum's mental health history was not discussed in determining mitigating evidence that could be presented at sentencing)).

     C.     FAILURE TO PRESENT MITIGATING EVIDENCE

     At sentencing, the State presented evidence that Mr. Slocum was previously convicted of being a felon in possession of a firearm in California, manslaughter in Florida, and escape in Florida. (Resp. Ex. 4-2 at 531.) The State presented testimony from Mr. Jackson's girlfriend, Erica Harris. (*Id.* at 533.) Ms. Harris testified that she was five months pregnant when Mr.

Slocum killed Mr. Jackson, and her son was prematurely born as a result of her stress caused by losing Mr. Jackson. (*Id.*). She showed a picture of her prematurely-born son to the jury. (*Id.* at 534.) Mr. Slocum did not present any mitigating evidence at sentencing.[2] (*Id.* at 537.) The jury gave Mr. Slocum the maximum penalty on all charges, and the court ran all sentences consecutive to each other. (*Id.* at 556.)

The mitigating factors that Mr. Slocum claims should have been presented to the jury stem from his abusive childhood. Mr. Slocum had a bed-wetting problem growing up, and he never had clean clothes. (Doc. No. 54 at 15-16.) Therefore, he always had to go to school smelling badly. (*Id.* at 16.) At home, his mother beat him for wetting the bed. (*Id.*). His classmates made fun of him because he smelled bad, so he started cutting classes, and eventually dropped out of school in the sixth grade. (*Id.*). Mr. Slocum's mother beat him every day with Hot Wheel tracks, extension cords, broomsticks, shoes, and anything else she could get her hands on. (*Id.*). His father was not around. (*Id.*). Mr. Slocum claims that he was the only child of his mother's four children that she beat, possibly because his three siblings have a different father. (*Id.* at 18.)

When Mr. Slocum was ten-years-old, his mother called the police on him because he stole a Christmas present for her. (*Id.*). When he got out of the juvenile institution, his mother committed him to a mental institution at age eleven. (*Id.* at 17.) When he was twelve, a foster family adopted him. (*Id.* at 20.) When that situation did not work out, they placed him in another foster home. (*Id.*). When he was fifteen, he went back to live with his mother. (*Id.*).

---

[2]The Director claims that the jury heard some mitigating factors presented during Mr. Slocum's case-in-chief, such as the fact he was a foster child growing up and that he ran from the police because he was trying to prevent his son from becoming a foster child. (*See* Resp. Ex. 5 at 106.)

When he turned sixteen, he moved out on his own. (*Id.* at 17.)

III.    STANDARD OF REVIEW

A district court has jurisdiction to entertain writs of habeas corpus on behalf of people in custody pursuant to state court judgments. 28 U.S.C. § 2254(a) (2006). The only issue the district court may consider is whether a prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." *Id.*

A court may not grant a petition for a writ of habeas corpus unless the applicant exhausts the "remedies available in the courts of the State" prior to filing the petition. *Id.* at (b)(1)(A). A petitioner "must present his federal claims to the state courts in a timely or procedurally correct manner in order to provide the state courts an opportunity to decide the merits of those claims." *Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir. 1992). Failure to do so will result in his claims being barred "unless [he] can demonstrate cause for the default and actual prejudice as a result of the violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Harris v. Lockhart*, 948 F.2d 450, 452 (8th Cir. 1991) (quoting *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)).

A procedural default does not bar a "substantial claim of ineffective assistance of trial counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 132 S.Ct 1309, 1320 (2012). A "substantial claim" does not include claims that are without merit or "wholly without factual support." *Id.* at 1319. The Eighth Circuit has applied this exception to Rule 37 petitions. *Sasser v. Hobbs*, 735 F.3d 833, 853 (2013). This exception only applies to ineffective assistance of trial counsel claims, and is not extended to ineffective assistance of appellate counsel claims. *Dansby v.*

*Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014), *cert. denied*, *Dansby v. Kelley*, No. 14-8782, 2015 WL 5774557 (Oct. 5, 2015).

If a petitioner raises a claim that was fairly presented and adjudicated on the merits in state court, the federal court can overturn the state court's decision only if it

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006). A factual determination by the state court is "presumed correct," and a petitioner can only rebut that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (2006).

IV.    FRAMEWORK OUTLINED BY THE SUPREME COURT

The United States Supreme Court outlined the framework the Court must use to analyze Mr. Slocum's claims. First, Mr. Slocum must prove that he, acting *pro se*, was ineffective in the Rule 37 proceedings for failing to properly verify his petition. *Martinez*, 132 S.Ct at 1318. Second, Mr. Slocum must show that his ineffective assistance of trial counsel claim is substantial. *Id.* at 1318-19. If he can meet these two prongs, he will have established cause for his procedural default. *Id.* at 1317. If Mr. Slocum can establish cause, he will next need to establish that he was prejudiced by his failure to properly verify his petition. *Coleman*, 501 U.S. at 749-50. Once Mr. Slocum establishes cause and prejudice, he can then proceed to prove that he is entitled to habeas relief.

The critical question in each of the first three inquiries is whether Mr. Slocum's ineffective assistance of counsel claims have merit. If the claim does not have merit, Mr.

Slocum would not have been inefficient for failing to verify the petition. *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (holding that counsel was not deficient for failing to raise a meritless claim); *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010) (holding that trial counsel was not deficient for failing to raise meritless state law claims); *Gray v. Bowersox*, 281 F.3d 749, 756 n.3 (8th Cir. 2002) ("[B]ecause the underlying objection would have been without merit, a claim of ineffective assistance is not viable."). Additionally, to prove that his claim is substantial, Mr. Slocum would have to show that his claim is not "wholly without merit." *Martinez*, 132 S.Ct at 1319. Lastly, to prove prejudice, Mr. Slocum would have to show that his claim had merit. *Coleman*, 501 U.S. at 750. Therefore, the Court will determine if any of Mr. Slocum's claims have merit.

V.     ANALYSIS

In Mr. Slocum's petition for a writ of habeas corpus, he states three ineffective assistance of trial counsel claims that he believes are substantial: (1) ineffective assistance of trial counsel for failing to investigate Mr. Slocum's claims; (2) ineffective assistance of trial counsel for failing to ask for a competency hearing on Mr. Slocum, given his history of mental illness; and (3) ineffective assistance of trial counsel for failing to investigate and present substantial mitigating evidence during the sentencing phase of trial. (Doc. No. 1.)

To prevail on an ineffective assistance of counsel claim, a petitioner must show that "his counsel's deficient performance prejudiced him." *Porter v. McCollum*, 558 U.S. 30, 38 (2009); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must prove his counsel was deficient by showing that "his counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The petitioner must then show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

A.    APPLICABILITY OF *MARTINEZ*

The Director first asks the Court to reconsider its recommendation, adopted by the district court, that Mr. Slocum's petition qualifies for the *Martinez* exception if it is substantial. (Doc. No. 56 at 9.) Specifically, she argues that Mr. Slocum (1) never effectively filed his Rule 37 petition, and (2) presented these claims in his initial-review collateral proceeding.[3]

The Court already recommended to the district court that the *Martinez* exception applies to this case because Mr. Slocum's procedural default prevented the state court from hearing his ineffective assistance of trial counsel claims in the initial-review proceedings. (Doc. No. 18 at 8.) The Director objected to the Court's recommendation, arguing that Mr. Slocum never effectively filed his Rule 37 petition. (Doc. No. 20 at 4.) She did not raise the argument that Mr. Slocum already presented these claims in his initial-review collateral proceeding. The district court adopted the Court's recommendations over the Director's objections. (Doc. No. 22.) After reviewing the Director's arguments, the Court does not see any reason to reconsider its previous ruling. Mr. Slocum, proceeding *pro se*, failed to follow a procedural rule in filing his Rule 37 petition, which prevented him from having his Rule 37 petition heard on the merits. (Doc. No. 8-4 (dismissing the petition because the circuit court did not have jurisdiction)); *See Martinez*, 132 S.Ct at 1317 ("The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law."). Therefore, the Court recommends that the district court decline the Director's request to

---

[3]Because the Court did not order briefing on this issue, Mr. Slocum did not have a chance to respond to these arguments. Nonetheless, the Court will consider her arguments in this situation.

reconsider its holding that *Martinez* applies in this case if Mr. Slocum's claims are substantial.[4]

     B.    DEFERENCE.

The first issue the Court asked the parties to brief is whether the circuit court's ruling deserves the deference afforded to state courts by § 2254(d) and (e). *See infra* Section III. The Director argues that the Rule 37 court should be afforded deference because it is the "last reasoned decision of the state courts." (Doc. No. 56 at 7 (quoting *Worthington v. Roper*, 631 F.3d 487, 97 (8th Cir. 2011))).[5] Mr. Slocum failed to brief this issue. For the following reasons, the Court recommends the district court not give deference to the circuit court.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") places a high deference on state decisions. *See* 28 U.S.C. § 2254(d)-(e) (2006). In order to effectuate that deference in cases where the state's highest court summarily affirms the lower court, federal courts will give deference to the last reasoned opinion of a state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Worthington*, 631 F.3d at 497. The United States District Court for the District of Arizona applied this reasoning in the *Martinez* context. *Schriro*, 2012 WL 5936566, at *4. In that case, the post-conviction court denied the petitioner's second petition for post-conviction relief as procedurally defaulted and, alternatively, on the merits. *Id.* The Arizona Supreme Court affirmed the dismissal on procedural grounds and did not address the merits.

---

[4] Under Arkansas Rule of Criminal Procedure 37.1(d), the circuit clerk "shall not accept for filing" any unverified petition. The Court does not decide whether *Martinez* would apply if the circuit clerk rejects an unverified petition.

[5] Although the Director states that this court "must" use the last-reasoned state court opinion, the case cited is a district court opinion out of the United States District Court for the District of Arizona, which is only persuasive authority. (Doc. No. 56 at 7 (citing *Martinez v. Schriro*, No. CV 08-785-PHX-JAT, 2012 WL 5936566, at *5 (D. Ariz. Nov. 27, 2012))). *Worthington* also provides clarity, but involves a case where the state supreme court summarily dismissed some claims without reasoning, so the federal court looked at the trial court's reasoning to determine the reasoning. Since this is a completely separate issue, that case is also afforded persuasive authority.

*Id.* The federal court held that it could use the "look through" doctrine in *Ylst* to give deference to the post-conviction court's alternative merits holding. *Id.*

In this case, the district court should not give deference to the circuit court. Unlike in *Schriro*, *Ylst*, or *Worthington*, the Arkansas Supreme Court held that the circuit court did not have jurisdiction to consider Mr. Slocum's petition on the merits. In cases where the state's highest court holds that the circuit court erred by considering the merits of the petition, the Court does not believe it would be proper to "look through" the highest court's judgment to the lower court's invalid reasoning. Therefore, in this case, the Court recommends the district court not give deference to the lower court.[6]

In case the district court disagrees, the Court will address Mr. Slocum's three habeas claims both *de novo* and under AEDPA's deferential standard. When the Court analyzes the claims under AEDPA's deferential standard, it will look only at the state court record, and will not supplement that record with the record it obtained from the evidentiary hearing. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

C.   FAILURE TO INVESTIGATE

Mr. Slocum first argues that Ms. Austin was ineffective for failing to investigate his theory of self-defense. (Doc. No. 1 a 8.) Specifically, he argues that she should have conducted pre-trial interviews with Brown and Williams. (*Id.*). He further argues that Ms. Austin was ineffective for failing to locate Lewis and Pittman, who he claims could have corroborated his allegation of self-defense at trial. (Doc. No. 55 at 6.)  He argues that she was deficient for

---

[6]The Court does not decide whether it would follow the *Schriro* court's reasoning if a similar situation were presented.

failing to locate the witnesses, and that deficiency prejudiced Mr. Slocum because the witnesses would have corroborated his testimony. (Doc. No. 55 at 6.) The Director argues that Ms. Austin was not deficient because she attempted to locate the witnesses and failed. (Doc. No. 56 at 17.)

    *1.*    *De Novo Review*

Ms. Austin was not deficient for failing to conduct pre-trial interviews with Brown and Williams. She testified that she attempted to talk with both Brown and Williams prior to trial, but she was unable to make contact with them. (Doc. No. 54 at 90-91.) She further testified that both witnesses had made sworn statements to the police, so it was not critical to talk to them since she basically knew what they were going to say. (*Id.* at 90-92.) Attempting to contact two eye witnesses who gave sworn, taped statements to the police prior to trial, and failing to make contact with them, does not fall below the objective standard of reasonableness for a defense counsel. *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (holding that when counsel has little reason to believe a witness's testimony would be helpful, it is not ineffective assistance of counsel for failing to interview that witness). Therefore, Ms. Austin was not deficient for failing to interview Brown and Williams.

Ms. Austin was also not deficient for failing to locate Lewis and Pittman. She testified at the evidentiary hearing that Mr. Slocum gave her Lewis's phone number, which she used to try and contact him and failed. (Doc. No. 54 at 92-93.) Ms. Austin also tried using a process server to locate Lewis, and the process server failed. (*Id.* at 93.) Counsel also used the process server to subpoena Pittman, but a female answered the door at the address they had for Pittman and told the process server that Pittman had moved to Louisiana. (*Id.*).

Failure to locate witnesses after using ordinary efforts to find them generally does not

constitute ineffective assistance of trial counsel. *Blair-Bey v. Nix*, 44 F.3d 711, 713 (8th Cir. 1995). Mr. Slocum argues that if avenues are available to compel a witness's presence at trial, those efforts must be taken. (Doc. No. 55 at 6 (citing *Armstrong v. Kemna*, 534 F.3d 857 (8th Cir. 2008) (holding that failure of counsel to utilize the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases (the "Uniform Act") was deficient))). However, if counsel does not know where in a state the witness is located, counsel cannot utilize the Uniform Act. *See* Ark. Code Ann. § 16-43-403 ("This certificate shall be presented to a judge of a court of record in the county in which the witness is found."). Here, counsel could not take advantage of the Uniform Act because, while she knew Pittman was in Louisiana, there is no evidence that counsel knew where in Louisiana Pittman could be found. Therefore, counsel was not deficient in failing to locate Lewis or Pittman, and this claim does not have merit.

### 2.    *Deference to State Court*

If the Court gave deference to the state court, this claim would also be denied. With regard to Brown and Williams, Ms. Austin testified at the Rule 37 hearing that she did not interview either witness prior to trial. (Resp. Ex. 5 at 109.) With regard to Pittman, Ms. Austin testified that she subpoenaed Pittman, but service was never perfected. (Resp. Ex. 5 at 102.) Lastly, with regard to Lewis, she testified that the prosecutor's office was also looking for Lewis, and the prosecutor was also unable to find him. (Resp. Ex. 5 at 112.) Therefore, she did not subpoena or interview Lewis. (*Id.*).

Citing *Strickland*, the circuit court held that counsel "obtained discovery, filed motions, subpoenaed witnesses, prepared for trial, cross-examined the state's witnesses, and advocated

for her client during pretrial and throughout the trial itself." (Resp. Ex. 4-4 at 43.)

The circuit court's order is not contrary to clearly-established federal law as determined by the Supreme Court of the United States, nor did it unreasonably apply the facts to the law in this case. With regard to Brown and Williams, Mr. Slocum did not show how interviewing either witness before the trial would have helped Ms. Austin prepare for trial. Therefore, any deficiency for failing to interview a witness did not prejudice Mr. Slocum. As to Lewis and Pittman, Mr. Slocum did not show what further measures Ms. Austin could have taken to ensure their presence at trial. Therefore, Ms. Austin was not deficient for failing to locate either witness. Since the circuit court applied the correct standard in evaluating the ineffective assistance of counsel claim, as established by the United States Supreme Court, and did not unreasonably apply the facts to the law, this claim is without merit.

D.    FAILURE TO ASK FOR A COMPETENCY HEARING

Mr. Slocum's next ground for relief is that Ms. Austin was ineffective for failing to request a competency hearing. (Doc. No. 1 at 10.) Mr. Slocum argues that he told counsel about his childhood and abusive past. (Doc. No. 55 at 5.) Additionally, he argues Ms. Austin testified that the violent nature of this offense was a "red flag" that Mr. Slocum may have a mental disorder. (*Id.*). Therefore, he argues Ms. Austin was deficient for not requesting a competency hearing. (*Id.*). He argues that he was prejudiced by Ms. Austin's deficient performance because the information from the competency hearing would have given him mitigating evidence to use during sentencing. (*Id.* at 6.)

The Director argues that counsel was not deficient because Mr. Slocum did not provide a basis for Ms. Austin to believe that a competency exam would be necessary. (Doc. No. 56 at

22-23.) Additionally, she argues that Mr. Slocum was not prejudiced because–even after a competency examination–a mental examiner would have found Mr. Slocum to be competent to stand trial. (*Id.* at 27-28.) She does not address whether Mr. Slocum was prejudiced because the results of the competency examination would have provided him mitigating evidence at the sentencing stage.

### 1. *De Novo Review*

Ms. Austin was not deficient for failing to ask for a competency hearing. Under the "prevailing professional norms at the time of [Mr. Slocum's] trial, counsel had an 'obligation to conduct a thorough investigation of the defendant's background.'" *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 396 (2000)). When counsel discovers evidence that could potentially uncover a defendant's mental health or mental impairment, counsel is required to follow that lead. *Id.* at 40 (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

There is simply no evidence in the record to support Mr. Slocum's testimony that Ms. Austin knew of his prior mental problems. Ms. Austin testified that the violent nature of Mr. Slocum's offense was a red flag. (Doc. No. 54 at 103.) Other than that factor, there were no other red flags that Ms. Austin found that would trigger her asking for a competency hearing. (*Id.* at 101.) Ms. Austin testified that her co-counsel, Steve Smith–who was Mr. Slocum's family friend–did not suggest that they send him for a competency examination. (Doc. No. 54 at 67.) These factors distinguishes this case from the facts in *Porter* and *Wiggins*, where the Supreme Court found that counsel knew of the fact that the petitioner had some mental problems and did not investigate further. Here, Ms. Austin knew of no facts to indicate that she

needed to ask for a mental evaluation. *See Guinan v. Armontrout*, 909 F.2d 1224, 1228 (8th Cir. 1990) (declining to adopt a per se rule that counsel must request a competency hearing when the defendant is charged with a violent crime and has a history of violent crimes). Therefore, Ms. Austin was not deficient in failing to ask for a competency examination, and this claim has no merit.

      2.     *Deference to State Court*

If the Court gave deference to the state court, its holding that Ms. Austin was not deficient in failing to ask for a mental competency examination would not be an unreasonable determination of facts.

At the Rule 37 hearing, Ms. Austin testified that Mr. Slocum advised her "of his childhood and how he was brought up in foster homes and things of that nature. At no time did [she] ever have any indication that there was an issue with his mental state to warrant" a mental competency examination. (Resp. Ex. 4-4 at 101.) Citing *Strickland*, the circuit court held that "[c]ounsel was aware of defendant's history and background and testified that she had no good faith basis for requesting an Act III mental evaluation. Defendant failed to show trial counsel was ineffective on this allegation." (*Id.* at 43.) The court used the correct standard for evaluating an ineffective assistance of counsel claim and did not unreasonably apply the facts to that standard. Therefore, this ground for relief has no merit.

    E.    F<span style="font-variant:small-caps">AILURE TO</span> P<span style="font-variant:small-caps">RESENT</span> M<span style="font-variant:small-caps">ITIGATING</span> E<span style="font-variant:small-caps">VIDENCE</span>

In Mr. Slocum's final claim, he argues that counsel "failed to investigate and present mitigating evidence of Petitioner's traumatic and abusive childhood during sentencing." (Doc.

No. 1 at 11.) He further argues that counsel "failed to object to the admittance of testimony and inflammatory photos presented by [the] alleged girlfriend of [the] deceased showing [the] jury [her] pre-mature born child whom she claims was born pre-mature because of this incident." (*Id.*). With regard to his traumatic and abusive childhood, Mr. Slocum argues that he told Ms. Austin about his childhood and she failed to investigate it or corroborate his allegations. (Doc. No. 55 at 5.) By failing to investigate Mr. Slocum's childhood, Ms. Austin was left with nobody to testify about it at sentencing, which prejudiced Mr. Slocum because no mitigating evidence was presented on his behalf. (*Id.*). The Director testified that Ms. Austin did not know of anybody she could subpoena to testify about Mr. Slocum's childhood, so she was not deficient. (Doc. No. 56 at 22.)

Mr. Slocum did not brief the issue regarding the prematurely-born child. However, Ms. Austin testified that the pictures were admissible under Arkansas law, and there is no evidence in the record to refute that statement. (Doc. No. 54 at 109.) As stated above, failing to raise an objection that does not have merit is not deficient. *Gray*, 281 F.3d at 756 n.3. Therefore, counsel was not deficient for failing to raise the objection to the victim's girlfriend's pictures.

1.    *De Novo Review*

The issue is whether Ms. Austin was constitutionally deficient by failing to further investigate Mr. Slocum's abusive childhood. *Wiggins*, 539 U.S. at 522 (citing *Strickland*, 466 U.S. at 691). In evaluating whether Ms. Austin should have further investigated Mr. Slocum's childhood, the Court must evaluate her conduct "from counsel's perspective at the time." *Id.* (quoting *Strickland*, 466 U.S. at 689). If counsel is aware of a potentially-mitigating factor, counsel is required to investigate that factor to a reasonable degree. *Porter*, 558 at 453. Counsel

is not required to investigate "every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins*, 539 U.S. at 533. However, "strategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

In *Wiggins*, counsel had a pre-sentence investigation report, records by the Baltimore City Department of Social Services, and a report from a psychiatrist. *Wiggins*, 539 U.S. at 523. "The records revealed several facts: Petitioner's mother was a chronic alcoholic; Wiggins was shuttled from foster home to foster home and displayed some emotional difficulties while there; he had frequent, lengthy absences from school; and, on at least one occasion, his mother left him and his siblings alone for days without food." *Id.* at 524. Based on these facts, the Supreme Court held that counsel had a duty to investigate the petitioner's childhood further. The United States Court of Appeals for the Eighth Circuit applied this reasoning in *Sinisterra v. United States*, 600 F.3d 900, 906-09 (8th Cir. 2010). In *Sinisterra*, the court held that a § 2255 evidentiary hearing was warranted when counsel did not investigate the defendant's traumatic childhood or present any mitigating evidence to the jury during sentencing. *Id*.

Both *Wiggins* and *Sinisterra* make clear that "counsel's complete, or near-complete, failure to investigate and present mitigation evidence relating to petitioners' backgrounds and mental capacities" is deficient. *Holder v. United States*, 721 F.3d 979, 996 (8th Cir. 2013). Counsel cannot abandon "their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources despite becoming aware of troubling circumstances in the petitioner's history." *Ortiz v. United States*, 664 F.3d

1151, 1170 (8th Cir. 2011).

Mr. Slocum testified that he informed Ms. Austin about his traumatic childhood, but not in the same detail as he did at the Court's hearing. (Doc. No. 54 at 65.) Ms. Austin verified that Mr. Slocum told her about his tough childhood. (*Id.* at 99.) She stated that she remembered that he went to multiple foster homes as a child. (*Id.*). She stated that she uses a client's tough upbringing to "build rapport with the client and tell them about [her] rough upbringing" in a "ghetto" in Southwest Little Rock. (*Id.*). However, she stated that a tough upbringing alone does not raise a red flag for her. (*Id.*).

Ms. Austin further testified that she intended to raise Mr. Slocum's tough childhood as a mitigating factor at sentencing. (*Id.* at 114.) She testified that he or his wife would have been the best people to testify about his childhood at sentencing. (*Id.* at 115-16.) She believed that she could not obtain records from Mr. Slocum's childhood from Chicago because she had no names of agencies or people in Chicago. (*Id.* at 114.) As a result, she testified she had no information to go on to investigate. (*Id.* at 115.) She did not develop an alternative strategy for presenting mitigating factors in case Mr. Slocum did not testify. (*Id.*). Ultimately, she made the decision to advise Mr. Slocum not to testify, Mr. Slocum took her advise, and the jury gave him the maximum sentences on all counts. (*Id.* at 118-20.)

Although Ms. Austin did not utilize the standard of care that this Court would have advised, her conduct did not fall to a constitutionally deficient level. Unlike in *Wiggins*, where counsel knew several facts regarding the petitioner's rough childhood that prompted the constitutional obligation to investigate further, Ms. Austin only knew that Mr. Slocum had a rough childhood and lived in two foster homes. The record does not show that Ms. Austin asked

any further questions about his childhood, or that Mr. Slocum provided any further information. The Court would advise defense attorneys to at least ask their clients for details about their childhoods, or, if they are aware that a client was in foster homes, send a Freedom of Information Act request to the state where the client was in foster care to see if there is any potentially-mitigating evidence. Finding mitigating evidence is especially important in cases where the client is facing life imprisonment or death. However, the United States Supreme Court has not recognized that these steps are constitutionally necessary. Therefore, Ms. Austin was not deficient for her failure to prosecute, and this claim has no merit.

### 2.    *Deference to State Court*

If the Court gave deference to the state court, it would deny this claim. At the Rule 37 hearing, Ms. Austin testified that she gave Mr. Slocum the option to speak at sentencing, but Mr. Slocum declined to do so. (Resp. Ex. 5 at 105.) He also refused to have his wife testify at sentencing for fear that the victim's family would retaliate against her. (*Id.* at 106.) Ms. Austin testified that Mr. Slocum testified about mitigating evidence regarding why he did not pull over for the police officer and that he lived in foster homes as a child during the case-in-chief. (*Id.*). Finally, Ms. Austin requested the Court to run his sentences concurrently rather than consecutively. (*Id.* at 107.)

The circuit court held that "defendant presented mitigating testimony while on the stand during the guilt phase. Argument was made by counsel to the jury concerning these possible mitigating factors. Additionally, defense counsel requested the sentence handed down by the jury to be run concurrently." (*Id.* at 44.) Citing *Strickland*, the court held that counsel was not deficient. (*Id.*). This holding applied the correct standard for evaluating an ineffective assistance

of counsel claim and did not unreasonably apply the facts from the Rule 37 hearing to that standard. Therefore, this ground for relief has no merit.

F.    PROCEDURAL DEFAULT

Since none of Mr. Slocum's claims have merit, Mr. Slocum was not deficient for failing to verify his Rule 37 petition. *Dodge*, 625 F.3d at 1019. Therefore, *Martinez* does not establish cause to excuse his claims' procedural default.  Mr. Slocum does not allege any other cause for his default, so his petition for a writ of habeas corpus should be denied as procedurally defaulted.

VI.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court, the District Court must determine whether to issue a certificate of appealability in its final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2) (2006).

Reasonable minds could disagree on the Court's decision regarding the ineffective assistance of counsel claims for failure to ask for a competency hearing and for failure to present mitigating evidence. Therefore, a certificate of appealability should be granted on those two issues.

Reasonable minds could not disagree on the Court's decision regarding the ineffective assistance of counsel claim for failure to investigate. Therefore, a certificate of appealability should not be granted on that issue.

## VII.   CONCLUSION

Mr. Slocum's claims are procedurally defaulted and should be dismissed with prejudice. The district court should issue a certificate of appealability on the ineffective assistance of trial counsel claims for failure to ask for a competency hearing and failure to present mitigating evidence.

SO ORDERED this 3rd day of December, 2015.

_____
United States Magistrate Judge